UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


```
-----------------------------x
NEGUS THOMAS,                 :
                             :
        Petitioner,          :
                             :
    v.                       :   Civ. No. 3:19CV1908 (AWT)
                             :
UNITED STATES OF AMERICA,     :
                             :
        Respondent.          :
-----------------------------x
```

**RULING ON MOTION PURSUANT TO 28 U.S.C. § 2255**

Petitioner Negus Thomas, proceeding pro se, has filed a motion, as amended, pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. The petitioner claims that he is entitled to relief because his counsel provided constitutionally ineffective assistance. He also claims that the Supreme Court decision in Davis v. United States, 139 S. Ct. 2319 (2019), invalidates his convictions that are based on 18 U.S.C. § 924(c).

For the reasons set forth below, the petitioner's contentions are without merit and his motion, as amended, is being denied without a hearing.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On July 9, 2002, a grand jury returned a superseding indictment that charged Thomas, Jerkeno Wallace and eight

additional co-defendants with various drug offenses and charged
Thomas and Wallace with several offenses based on their
involvement in the drive-by shooting and murder of Gil Torres. <u>See</u>
<u>United States v. Wallace</u>, 447 F.3d 184, 186 (2d Cir. 2006).

On May 13, 2003, a jury convicted Thomas and Wallace on all
counts. The defendants moved for judgments of acquittal and new
trials. Thomas raised a number of arguments, as follows: (i) the
government did not prove a narcotics conspiracy, but rather a
"buyer-seller" relationship between him and drug customers; (ii)
he did not aid and abet Kimberly Cruze in her sale of crack
cocaine to an undercover officer on February 11, 2002; (iii) he
did not "manage and control" 81 Edgewood Street but instead was
a "guest" at the residence; (iv) the court lacked jurisdiction
over the counts charging a violation of 18 U.S.C. § 924(c)
because the indictment was silent as to the type of firearm used
and, alternatively, that he could not be convicted for two §
924(c) violations based on a single act with a single firearm;
and (v) the government did not prove premeditation in the drive-
by shooting and murder of Gil Torres. Co-defendant Wallace
argued that there was insufficient evidence to prove that: (i)
the defendants formed an unlawful agreement to distribute
cocaine base but – if there was such an unlawful conspiracy – it
was not reasonably foreseeable to Wallace that the conspiracy
involved 50 grams or more of cocaine base; (ii) Wallace

distributed cocaine base to an undercover officer as charged in Count Five; and (iii) Wallace was involved in the pursuit and shooting of Gil Torres.

The court denied the motions for judgment of acquittal and a new trial and subsequently sentenced each defendant to an effective term of life imprisonment, followed by a consecutive term of ten years of imprisonment.

Both Thomas and Wallace appealed. Thomas's trial counsel handled the appeal and made at least fourteen arguments, which the government has summarized as follows:

1. Whether the Federal Drive-By Shooting Statute, 18 U.S.C. § 36, exceeded Congress's authority to regulate interstate commerce?

2. Whether the federal prosecution violated Thomas's right to equal protection of the law and promoted sentencing disparity?

3. Whether Thomas's prosecution violated the due process clause of the Fifth Amendment because 18 U.S.C. § 36 was unconstitutionally vague and the rule of lenity required that it not be applied to the instant case?

4. Whether the photo array was unduly suggestive?

5. Whether Thomas's statements to police violated "Miranda" and were they involuntary?

6. Whether there was a knock & announce violation?

7. Whether the video surveillance violated Thomas's 4th Amendment rights?

8. Did the trial court err in not admitting Tracy Greenwood's eyewitness statement?

9. Did the trial court err in overruling Thomas's objection to Jerkeno Wallace's statement to James Green?

10. Did the trial court err in admitting Jerkeno Wallace's statement to Peter Pitter?

11. Did the trial court err in denying Thomas's Rule 29 Motion for Judgment of Acquittal, which was based upon the insufficiency of the evidence to support the conviction?

12. Did the trial court err in refusing to give defense jury instructions on the issues of self-defense and a "buyer-seller" relationship?

13. Did the trial court err in refusing to canvass jurors regarding a remark that "they all look  alike"?

14. Did the trial court err in imposing a sentence in violation of <u>Blakely</u>?

Gov't's Resp. (ECF No. 11) at 3-4 (citing "Thomas's Appeal Brief, 2004 WL 3769952, at *3").

Wallace pursued only one issue on appeal, namely "Whether the District Court erred in not granting defendant, Wallace's, Motion for Judgment of Acquittal on the various murder and gun charges . . . because the Government failed to provide evidence that the defendant knew the shooting was in furtherance of a drug conspiracy." Gov't's Resp. at 4 (citing "Wallace's Appeal Brief, 2004 WL 5151477") (internal quotation marks omitted).

On appeal, the Second Circuit remanded the cases for consideration of whether resentencing was warranted under <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), but otherwise largely upheld the defendants' convictions. <u>United States v.</u>

4

Wallace, 178 Fed. Appx. 76 (2d Cir. 2006). See also United States v. Wallace, 447 F.3d 184 (2d Cir. 2006).

The court declined to resentence either Thomas or Wallace and they both appealed the court's Crosby ruling. The Second Circuit remanded "in accordance with the procedures set forth in United States v. Jacobson, 15 F.3d 19, 22 (2d Cir. 1994), with directions [that the court] issue orders clarifying whether, without considering the absence of evidence of post-sentence remorse and rehabilitation, it would have reached the same decisions not to resentence defendants." Wallace, 617 Fed. Appx. 22, 25 (2d Cir. 2015) (emphasis in original). After doing so, the court confirmed that without considering the absence of evidence of post-sentence remorse and rehabilitation, the court would have reached the same decision not to resentence Thomas.

While the Jacobson remand was pending before this court, Thomas filed a motion to set aside or vacate his sentence in which he made two claims; he subsequently amended that petition to add three more claims. The court denied that petition on the merits and declined to issue a certificate of appealability. Thomas appealed and his appeal was denied, as was his petition for writ of certiorari to the United States Supreme Court.

In his current petition Thomas makes eleven claims of ineffective assistance of counsel, which can be summarized as follows:

Claim One: Counsel failed to move to dismiss Count Twelve;

Claim Two: Counsel failed to object to the court's jury instruction that constructively amended Count Twelve;

Claim Three: Counsel failed to challenge the court's failure to instruct the jury that the drive-by shooting had to have occurred during the existence of the drug conspiracy; counsel failed to move for judgment of acquittal on the ground that the government failed to establish the "in furtherance" element of the § 36(b)(2)(A) offense; and counsel failed to challenge Count One by showing that the drug conspiracy was not in existence on the day of the shooting because the government did not start obtaining video until several months later;

Claim Four: Counsel failed to challenge the court's jurisdiction over Counts Twelve and Fourteen;[]

Claim Five: Counsel failed to properly advise Thomas on the elements of Counts One and Twelve;

Claim Six: Appellate counsel failed to challenge the conviction on Count Twelve on the grounds that it failed to state an offense and was constructively amended at trial (Claim One and Claim Two);

Claim Seven: Appellate counsel failed to challenge the conviction on Count Twelve on the grounds that there was insufficient evidence and an inadequate jury instruction (Claim Three);

Claim Eight: Appellate counsel failed to challenge the conviction on Count Twelve on the ground that the district court lacked subject matter jurisdiction (Claim Four);

Claim Nine: Counsel failed to challenge the sufficiency of the government's evidence to prove premeditation on Count Twelve;

Claim Ten: Counsel failed to object to the jury insttructions concerning premeditation on Count Twelve; and

Claim Eleven: Counsel failed to object to improper comments during closing summation.

Gov't's Resp. at 8-9.

Thomas asserts a twelfth claim based on _Davis v. United States_, 139 S. Ct. 2319 (2019). He argues that his convictions on Count Eleven and Count Fourteen, which charged the use of a firearm in furtherance of a crime of violence, are unconstitutional because the drive-by shooting statute is not a crime of violence in light of _Davis_.

All but two of Thomas's ineffective assistance of counsel claims involve Count Twelve, which charge a violation of 18 U.S.C. § 36. Count Twelve charged:

> On or about May 16, 2001, in the District of Connecticut, the defendants NEGUS THOMAS, a/k/a "BROWN EYES" and "B.E.," and JERKENO WALLACE, a/k/a "UPTOWN," aided and abetted by each other, in furtherance of a major drug offense, with malice aforethought, wilfully, deliberately, and with premeditation, and with intent to intimidate, injure, and maim, fired a weapon into a group of two or more persons, killing Gil Torres, and such killing was a murder within the meaning of Title 18, United States Code, Section 1111.
>
> In violation of Title 18, United States Code, Sections 36(b)(2)(A) and 1111(a) and 2.

_United States v. Thomas_, 3:02-cr-00072-AWT-1, Superseding Indictment (ECF No. 186) at 8 of 9.

## II.  LEGAL STANDARD

Federal prisoners can challenge a criminal sentence pursuant to 28 U.S.C. § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in

complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted).  A petitioner may obtain review of his claims if he has raised them at trial or on direct appeal; if he has not, such a procedural default can be overcome by a showing of "cause" and "prejudice", Ciak v. United States, 59 F.3d 296, 302 (2d Cir. 1995) abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002) (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)), or a showing of constitutionally ineffective assistance of counsel, see Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002); Murray v. Carrier, 477 U.S. 478, 487-88 (1986).

Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief". 28 U.S.C. § 2255(b). However, "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495 (1962). In making its determination regarding the necessity for a hearing, a district court may draw upon its personal knowledge and recollection of the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990). Thus, a § 2255 petition, or any part of it, may be dismissed without a hearing if, after a review of the record, the court determines that the motion is

without merit because the allegations are insufficient as a matter of law.

To prevail on an ineffective assistance of counsel claim, the petitioner must show, first, that his "counsel's representation fell below an objective standard of reasonableness" and, second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," [Strickland, 466 U.S.] at 690, and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694 . . . .

Brown v. Artuz, 124 F.3d 73, 79-80 (2d Cir. 1997). In this context, "there is no relevant difference between an [attorney's] act of commission and an act of omission." Padilla v. Kentucky, 559 U.S. 356, 370 (2010) (citation and internal quotation marks omitted). Rather, "[t]he court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Cullen v. Pinholster, 563 U.S. 170, 189 (2011)

(citation and internal quotation marks omitted). "That requires a substantial, not just conceivable, likelihood of a different result." Id. (citation and internal quotation marks omitted). To satisfy the prejudice element of the Strickland test, a petitioner "must make more than a bare allegation" of prejudice. United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993). "The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689). Courts should not second-guess the decisions made by defense counsel on tactical and strategic matters. See United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results[.]'" Aguirre, 912 F.2d at 561 (quoting Strickland, 466 U.S. at 696-67) (internal citations omitted)).

**III. DISCUSSION**

In its response, the government analyzes Thomas's prior § 2255 motion and concludes that he has not complied with the gatekeeping procedures with respect to a second or successive § 2255 motion. See Gov't's Resp. at 9-11. The court agrees with that analysis.

> Ordinarily, when a second motion is filed without a certificate, the District Court should transfer the case to the Court of Appeals. See Liriano v. United States, 95 F.3d 119, 123 (2d Cir. 1996) (per curiam). However, transfer is unnecessary when the motion is wholly without merit. See Powell v. United States, Nos. 95-CR-08-A, 13-CV-42-A, 2014 WL 2047884, at *2 (W.D.N.Y. May 19, 2014).

Nelson v. United States, No. 3:17-cv-899(RNC), 2018 WL 3764259, at *1 (D. Conn. Aug. 8, 2018). See also Minaya v. United States, 41 F. Supp. 3d 343, 345 (S.D.N.Y. 2014) ("However, transfer is unnecessary where the second or successive habeas corpus application is wholly without merit. See Terrence v. Artus, No. 05 Civ. 5994, 2005 WL 1705299, at *2 (S.D.N.Y. July 20, 2005) (dismissing successive habeas petition that was clearly without merit).").

As discussed below, each of the petitioner's claims is clearly without merit.

**A.     Claim One: Counsel Did Not Move to Dismiss Count Twelve**

The petitioner claims that his trial counsel was ineffective by not moving to dismiss Count Twelve. He argues that Count Twelve failed to:

provide adequate factual detail as to what precise "major drug offense" petitioner was allegedly involved in at the time of the murder; since count twelve doesn't incorporate Count One, there is no way of knowing whether the drug trafficking conspiracy charged in that count was <u>the</u> "major drug offense" considered by the grand jury. It is true enough that the conspiracy count plainly falls within the definition of a "major drug offense" laid out in section 36(a)(2). However, courts have long held that "each count of an indictment must stand on its own, and cannot depend for its validity on allegations of any count not <u>expressly incorporated</u>." See e.g., United States v. Miller, 774 F.2d 883, 885 (8th Cir. 1985).

Pet'r's Mem. (ECF No. 2) at 5 and 6 of 21 (emphasis in original).

Thomas's claim is without merit.

"[A]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." <u>United States v. Bout</u>, 731 F.3d 233, 240–41 (2d Cir. 2013) (citation and internal quotation marks omitted). In <u>Bout</u> the court observed:

It bears recalling that "we have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (<u>in approximate terms</u>) of the alleged crime." <u>United States v. Pirro</u>, 212 F.3d 86, 100 (2d Cir. 2000) (internal quotation marks omitted) (emphasis supplied).

731 F.3d at 240. <u>See</u> Fed. R. Cr. P. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . .").

Count Twelve satisfied all the foregoing requirements and gave the petitioner notice of the charge against him. As explained by the government in its response:

Count Twelve . . . identified:

- Exactly what Thomas and Wallace did: they "fired a weapon into a group of two or more persons, killing Gil Torres[.]"

- The crime: a violation of 18 U.S.C. § 36(b)(2)(A) and 1111(a) and 2.

- The date of the offense: May 16, 2001.

- The requisite intent: "with malice aforethought, wilfully, deliberately, and with premeditation, and with intent to intimidate, injure, and maim[.]"

Gov't's Resp. (ECF No. 11) at 17.

Thus, any motion to dismiss Count Twelve on the grounds asserted by Thomas would clearly have been denied. Consequently, failure of defense counsel to file such a motion to dismiss did not fall below an objective standard of reasonableness. "Decisions concerning investigation and strategy, including the arguments to stress, witnesses to call, motions to make, and lines of inquiry to pursue, fall squarely within the ambit of trial strategy and, if reasonably made, cannot support an ineffective assistance claim." United States v. Jackson, 41 F. Supp. 3d 156, 165 (N.D.N.Y. 2014) (citation and internal quotation marks omitted) (emphasis in original).

Moreover, as explained by the government, even assuming arguendo that the defense counsel had been able to successfully move to dismiss Count Twelve because it did not adequately define or identify the "major drug offense" in the case, it is highly likely that the government would have obtained an amended indictment adding to Count Twelve the words "as charged in Count One". Consequently, the petitioner cannot show that he was prejudiced since there would not have been a different result.

**B.      Claim Two: Failure to Object to Constructive Amendment of Indictment**

The petitioner claims that his trial counsel was ineffective by allowing the court to constructively amend Count Twelve in the jury instructions. He argues:

> Trial counsel was also ineffective for failing to object to the constructive amending of Count Twelve . . . . Here the judge's instructions did more than tweak[] the "form" of the Count; instead, they effectively altered the terms of the indictment to allow the jury to find an essential element of the offense by virtue of a broader range of facts than those [] which the government alleged. Because the indictment did not allege that petitioner committed the murder in furtherance of Count One's drug conspiracy offense, petitioner was tried and convicted on a charge not included in the grand jury's indictment.

Pet'r's Mem. at 7-9.

"A constructive amendment occurs when the government's presentation of evidence and the district court's jury

instructions combine to modify essential elements of the
offense charged to the point that there is a substantial
likelihood that the defendant may have been convicted of an
offense other than the one charged by the grand jury." United
States v. Vebeliunas, 76 F.3d 1283, 1290 (2d Cir. 1996)
(citations and internal quotation marks omitted). Count Twelve
charges the petitioner and Wallace with killing Gil Torres in
violation of 18 U.S.C. § 36. That statute requires proof that
the defendants: (1) acted "with the intent to intimidate,
harass, injure, or maim," (2) when they "fire[d] a weapon into
a group of 2 or more persons" (3) "in furtherance . . . of a
major drug offense[.]" 18 U.S.C. § 36(b). The petitioner
contends that the court constructively amended the indictment
by instructing the jury that the "major drug offense" element
of Count Twelve could be found in Count One.

   After reading the indictment to the jury, including Count
One, the court advised the jury of the definition of "major
drug offense" in 18 U.S.C. § 36, as follows:

> you are instructed that, as used in the drive-by
> shooting statute, a "major drug offense" means, in
> the context of this case, a conspiracy to distribute
> controlled substances punishable under Title 21
> U.S.C. Section 846.

Pet'r's Mem., Ex. 3 (ECF No. 3-3) at 19 of 29:19-23. Thus, in
instructing the jury the court tracked the language of the
statute. Count One was the only count in the Superseding

Indictment that charged a violation of 21 U.S.C. § 846.
Consequently, it was appropriate for the court to explain to
the jury that "conspiracy to distribute controlled substances
punishable under Title 21 U.S.C. Section 846 . . . is the
offense charged in Count One of the Superseding Indictment."
See Pet'r's Mem., Ex. 3 at 19 of 29:22-24.

Thus, the petitioner's counsel did not commit an error by
failing to object to the jury charge on this basis.

C.    **Claim Three: Jury Instructions and
      Sufficiency of the Evidence**

The petitioner makes three arguments in this claim. First,
the petitioner argues that "the court's jury instructions were
erroneous to the extent that the jury was not charged on the
necessity that the government prove the murder occurred within
the time frame of the conspiracy[.]" Pet'r's Mem. at 10.

However, the jury was instructed about that necessity. The
court instructed the jury, in pertinent part, as follows:

> to sustain its burden of proof for the crime of drive-
> by shooting while engaged in a conspiracy to distribute
> crack cocaine, the government must prove the following
> four essential elements beyond a reasonable doubt:
> First that on or about May 16, 2001, Mr. Thomas and
> Mr. Wallace were acting in furtherance of a major drug
> offense[.]

Pet'r's Mem., Ex. 3 at 18 to 19 of 29:23-25 to 5 (quoting
court's jury instructions) (emphasis added). Also, Count
One of the Superseding Indictment expressly charged that

16

the conspiracy ran from "about <u>May 16, 2001</u>, until about March 11, 2002[.]" Pet'r's Mem., Ex. 1 (ECF No. 3-1) at 2 of 9 (emphasis added). The evidence at trial showed conclusively that the petitioner was robbed on May 16, 2001, and the murder occurred on that day, soon after the robbery.

Second, the petitioner argues that "his trial lawyer was equally ineffective in not making a specific request for judgment of acquittal because the government failed to establish the 'in furtherance' element of the § 36(b)(2)(A) offense". Pet'r's Mem. at 12. As discussed by the government in its response, this argument was made by co-defendant Wallace on appeal and rejected without comment in a summary order.

Third, the petitioner argues that "the evidence in the record does not establish that the conspiracy was actually in effect 'on May 16, 2001,' the day of the murder." Pet'r's Mem. at 13. However, as explained by the government in its response, "This claim is factually wrong. Given the direct testimony of Kim Cruze and Peter Pitter – two of Thomas's co-conspirators – the drug trafficking conspiracy was in effect on May 16, 2001. <u>See</u> Government's response to the defendants' motions for judgment of acquittal and new trial. 3:02CR72 [Doc. No. 512 at pp. 12-16]." Gov't's Resp. at 22.

In light of the foregoing, the petitioner has failed to show that his counsel committed any error, much less an unprofessional error that fell below an objective standard of reasonableness.

### D.   Claim Four: Jurisdictional Challenge

In this claim, the petitioner argued that his trial counsel was ineffective by not challenging the court's jurisdiction over Count Twelve and Count Fourteen, but he has withdrawn this claim. See Pet'r's Mem. at 14.

### E.   Claim Five: Elements of the Offense in Counts One and Twelve

The petitioner claims that his attorney ineffectively and improperly advised him about the elements of the offenses charged in Count One and Count Twelve and that this bad advice caused him to not offer to plead guilty to Count Four and Count One and to not testify at trial. The petitioner states:

> During the pretrial stages of my case I conferred with my lawyer about the aspects of my case[.] During one conference, while explaining the ramifications of pursuing trial, my lawyer told me that if I was found not guilty of Count Twelve, then I would automatically be found not guilty of the Count One conspiracy because, in my lawyer's own words, "they are both related, and one cannot stand without the other." I further specifically explained to my lawyer that I was innocent of the murder because my intent was never to personally injure or kill the victim. I explained that I had no actual knowledge that Mr. Torres would be shot. My lawyer told me that it "made no difference" whether or not I intended to do harm to Mr. Torres, the jury could still find me guilty. But the district court instructed the jury in my criminal case that the government <u>had</u> to prove intent. In short, had

> I known that Count One could, in fact, succeed without
> reliance on Count 12, as I explained to my lawyer prior to
> trial, I would have sought a plea for "any amount of time
> less than life." And if I would have known that the government
> had to prove a specific intent under Count Twelve, I would
> have exercised my right to testify and tell the jury myself
> that I never personally intended for Mr. Torres to be injured
> or killed via actual shooting.

Pet'r's Mem. at 17-18 (emphasis in original).

> The government contends that

> Thomas's assertions, standing alone, are not enough to
> satisfy the first prong of the Strickland standard. Thomas
> has vaguely and generally alluded to a dialogue with defense
> counsel that occurred approximately seventeen years ago. He
> has not obtained a complementary affidavit from his
> attorney.

Gov't's Resp. at 23. But taking note of Chang v. United States,

250 F.3d 79, 85 (2d Cir. 2001), where the court placed weight on

the fact that "[a]t the request of the court, the record was

supplemented by a detailed affidavit from trial counsel credibly

describing the circumstances concerning appellant's failure to

testify", the government also reserves the right to obtain an

affidavit from defense counsel if the court concludes that the

petitioner has satisfied his burden with respect to the second

prong of the Strickland standard. See Gov't's Resp. at 24 n.8.

Such an affidavit is not necessary here because even if the

petitioner were able to meet his burden of demonstrating that his

attorney erroneously advised him about the elements of the drive-

by shooting statute and the elements of Count One, he cannot

satisfy the second prong of Strickland, i.e. that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). As discussed above, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). What is required is "a substantial, not just conceivable, likelihood of a different result." Id. (citation and internal quotation marks omitted).

The petitioner contends that he was prejudiced by that advice because he would have sought a plea for any amount of time less than life. His affidavit makes it clear that he would have offered to plead guilty only to Count Four and Count Ten. See Pet'r's Aff. at ¶ 4 (ECF No. 3-4) ("Had my lawyer properly advised me as to the correct law concerning my case and rights at trial, I would have pled guilty (only to those offenses I had participation in, i.e., counts 4 and 10)".) But as the government represents,

> [g]iven the strength of the government's case on the drive-by shooting, and the gravity of that offense, the government never would have resolved this prosecution against Mr. Thomas without a conviction on the murder. Stated differently, any alleged bad advice by trial counsel did not cause Thomas to go to trial on the murder charges.

Gov't's Resp. at 26. In the court's view, based on having presided at the trial, this is an accurate statement.

20

Nor can the petitioner meet his burden with respect to showing actual prejudice with respect to his decision not to testify.  Here, it is very unlikely that a jury would have credited the testimony the petitioner states he would have given and the result of the trial would have been different. As the government states:

> In this case, Mr. Thomas has failed to demonstrate that if he had testified that although he (1) committed the drug deal caught on video (as charged in Count Four) and (2) maintained a drug premises at 81-83 Edgewood Street (as charged in Count Ten), he nonetheless "had nothing to do with the shooting," see Affidavit at ¶ 3, and, moreover, was not involved in the drug conspiracy charged in Count One, there would have been a reasonable probability that the jury would have believed his testimony and acquitted him.  The hard truth is that the government's evidence squarely put Mr. Thomas in the middle of the drive-by shooting and the overarching drug conspiracy.

Gov't's Resp. at 26.

The government accurately describes the cross-examination to which Thomas would have been subjected as "withering". Gov't's Resp. at 25. The petitioner "cannot carry his burden of showing how he would have withstood withering cross-examination concerning his extensive and well documented drug trafficking activity, his possession of a firearm, his retrieval of that firearm moments after his drug turf had been invaded and his drugs taken, his pursuit of those men, his motive to kill them, and the fact shots were fired from his car" while he was in the vehicle. Gov't's Resp. at 25. "At bottom, the only difference between the trial that occurred and the hypothetical trial

Thomas envisions is that in the face of the government's evidence, he would have testified that 'I never knew about a firearm being used to shoot Mr. Torres and . . . never had any intention to harm the victim by means of shooting him. In fact, I . . . had nothing to do with the shooting.' <u>See</u> Petitioner's Affidavit at ¶ 3."

> **F.   Claim Six, Seven and Eight: Appellate Counsel**

The petitioner claims that his counsel's failure to pursue Claim Two, Claim Three, and Claim Four on appeal constitutes ineffective assistance of counsel.

"Although the <u>Strickland</u> test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994). "In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." <u>Id.</u> However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Id.</u>

> When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

As discussed above, the petitioner's counsel made at least fourteen arguments on appeal.

> Counsel questioned the constitutionality of 18 U.S.C. § 36 – the foundation of Count Twelve – on three grounds. In addition, counsel advanced seven evidentiary challenges, attacked the sufficiency of the government's evidence, challenged the court's jury instruction regarding self-defense and buyer-seller relationship, and argued (successfully) that the use of 18 U.S.C. § 924(c) in Counts Thirteen and Fourteen was improper.

Gov't's Resp. at 28.

As reflected in the discussion above with respect to Claim Two, Claim Three, and Claim Four, Thomas cannot demonstrate a reasonable probability that these claims would have been successful on appeal. Thus, "[a]ppellate counsel's decision was therefore simply not ineffective, but prudent, as the raising of this frivolous argument may well have distracted from other, more meritorious issues urged by appellate counsel." Brunson v. Tracy, 378 F. Supp. 2d 100, 113 (E.D.N.Y. 2005). See also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994)

("[T]he failure to raise nonmeritorious issues does not constitute ineffective assistance.").

### G.    Claim Nine: Count Twelve – Lack of Premeditation

The Petitioner claims that his trial counsel was ineffective because he failed to challenge the sufficiency of the evidence with respect to premeditation as it relates to Count Twelve. However, defense counsel did in fact challenge the sufficiency of the government's premeditation evidence in his post-verdict motion for judgment of acquittal. The memorandum in support of that motion includes the following:

> In the case at bar, the government failed to produce sufficient evidence of premeditation. ". . . . [B]etween the forming of the intent to do the act and the act itself, an appreciable length of time must have elapsed to allow deliberation, reflection and judgment. . . . A premeditated act . . . is never one which has been committed in a hasty or impulsive manner." (<u>People v. Sneed</u> (CO 1973) 514 P2d 776, 778.) Thus, defendant's actions were not cold and calculating where defendant used "hastily obtained weapons of opportunity, carried out the attacks in a haphazard manner . . . and then fled in panic." (<u>Mahn v. State</u> (FL 1998) 714 So2d 391, 398; see also <u>State v. Koho</u> (ID 1967) 423 P2d 1004, 1006 ["deliberately" means done in a cool state of the blood, not in sudden passion engendered by lawful or some just cause or provocation; "premeditation" means thought of beforehand for any length of time however short].) According to the government's witnesses, Thomas was robbed. (Vol. I, Pg. 58 - Pg. 59.) He got up and ran into 81 Edgewood Street. (Vol. V, Pg. 39 - Pg. 40.) After 10 to 20 seconds he reappeared. (Vol. V, Pg. 41 - Pg. 42.) He jumped into a car and sped off. (Vol. V, Pg. 45 - Pg. 46.) After five minutes, Gil Torres was shot on Farmington Avenue. The police obtained information that there was a dispute between the occupants of two cars. (Vol. III, Pg. 162 - Pg. 163.) The government presented no independent evidence that the conduct of Thomas was cold and calculating. Instead, the government presented evidence supporting the defense theory that Thomas acted in the "heat of passion".

United States v. Thomas, 3:02-cr-00072-AWT-1, ECF No. 505 at 13-14. The fact that the petitioner's counsel was directly challenging the sufficiency of the government's premeditation evidence was clearly apparent to the government and to the court because the government responded by arguing:

> The jury properly determined that the defendants committed first degree murder in the shooting death of Gil Torres. As the court instructed, first degree murder necessitates both malice aforethought and premeditation. (Vol VIII: 182-184) The jury, therefore, necessarily had to determine whether a sufficient amount of time elapsed between the provocation – that is the robbery of Negus Thomas – and the ensuing murder on Farmington Avenue. Clearly sufficient evidence was adduced at trial to support the verdict of first degree murder.

> Thomas was thrown to the ground and robbed. But as his assailants fled in their Honda Prelude, thus ending the threat of physical harm, Thomas ran several houses to 81 Edgewood Street, were he retrieved a firearm and keys to his car. From there, Thomas and Wallace pursued the Torres brothers and Lorenzo Martinez for nearly five minutes, covering almost 1½ miles, before catching them. Thus, by this point, Thomas and Wallace had sufficient time to reflect on the circumstances that brought them to the intersection of Farmington Avenue and Gillette Street, to ponder the events that had transpired, and to make a deliberate and conscious decision for which they would be accountable. They did not turn back; instead, they pulled up next to the Prelude, which was stopped in afternoon traffic at a red light, near an easily accessible escape route on Gillette Street, an unloaded a gun into the Prelude. The jury had sufficient evidence to conclude that the murder of Gil Torres was premeditated.

3:02-cr-00072-AWT-1, ECF. No. 512 at 34. Thus, this was raised and fully considered in connection with petitioner's motion for judgment of acquittal.

### H.   Claim Ten: Count Twelve – Jury Instruction on Premeditation

The petitioner claims that his trial counsel was ineffective by failing to object to, or appeal, the jury instruction on premeditation. He argues that the court's instruction was erroneous because it failed to inform the jury that "[t]he defendant must, in fact, have deliberated during that time period" and "[t]he instruction given in petitioner's case failed to implement this necessity, i.e. that petitioner actually did some kind of deliberating within the four-minute time span before the actual murder." Mot. for Leave to Amend (ECF No. 7) at 8. In fact, the jury was instructed that it had to find that the petitioner deliberated.

Thomas relies on just an excerpt of the jury instruction on premeditation. That excerpt appears in the following context:

> Premeditation means "with deliberation or prior thought." An act is done with premeditation if it is done upon deliberation. The government must prove that the defendant you are considering killed -- or aided and abetted in the killing of -- Gil Torres only after thinking the matter over, deliberating whether to act before committing the crime. There is no requirement that the government prove that the defendant you are considering deliberated for any particular period of time in order to show premeditation. It is sufficient to satisfy this element if you find that before he acted, the defendant you are considering had a period of time

to become fully aware of what he intended to do and to think it over before he acted.

Pet'r's Mem., Ex. 3 (ECF No. 3-3) at 21 of 29:18-25 to 6.

Thus, the jury was instructed that to convict the petitioner on Count Twelve it had to find that he acted only after thinking the matter over, deliberating whether to act before committing the crime.

## I.      Claim Eleven: The Government's Summation

The petitioner claims that his trial counsel was ineffective by failing to object to allegedly improper comments by the government during its summation. The petitioner relies on two excerpts, and he argues as follows:

> Closing arguments began like this for the government: "Ladies and gentlemen . . . you're going to be called upon to bring the rule of law to the conduct and the events that you've seen on Edgewood Street." Vol. VIII of Trial transcripts, pg. 9. The government's closing argument ended like this. "Ladies and gentlemen, as you've sat here the past week and a half, the case has probably seemed to be long to everyone but you. But now the case is yours. And yours alone. We'll be done in a couple of hours and you'll have to make a decision and you'll have to make the same decision that every jury has to make." T.T. pg. 36-37, Vol. VIII.

Mot. for Leave to Amend at 8-9.

The petitioner contends that the government's comments were

> a violation of the rule against appealing to the passion of the jurors. . . . The comments, in essence, asked the jurors to place themselves in the position of the community as a whole. Such comments have been banned by courts because they encourage the jury to "depart from neutrality and to decide the case on basis of personal interest and bias instead than on evidence." United States v. Palma, 473 F.3d

27

899, 902 (8th Cir. 2007).

Mot. for Leave to Amend at 9-10.

There is nothing improper in the excerpts of the government's summation identified by the petitioner. A prosecutor should avoid arguments that urge the jury to decide the case based on emotion or prejudice. The following passage from <u>United States v. Barlin</u>, 686 F.2d 81 (2d Cir. 1982), is instructive:

> [The defendant] claims the government improperly appealed to the jury's passion and emotion in characterizing their job as "the one occasion on which you have a duty to do something about the drug traffic in our community." This is one of a genre of comments which appears designed to divert rather than focus the jury upon the evidence and does not belong in summation.

<u>Id.</u> at 93. By way of contrast, here the first excerpt from the government's summation directed the members of the jury to the conduct or events on Edgewood Street that they had learned about during the trial. Nor does anything in the second excerpt suggest to the jury in any way that it could decide the case on the basis of anything other than the evidence. Thus, there was no basis for the petitioner's counsel to object to the government's summation.

### J.    Claim Twelve: <u>Davis v. United States</u> and 18 U.S.C. § 924(c)(3)

The petitioner claims that in light of the Supreme Court's decision in <u>Davis v. United States</u>, 139 S. Ct. 2319 (2019), his

convictions on Count Eleven and Count Fourteen are unconstitutional. He does not address this issue in his memorandum. On Count Eleven, the jury found the defendant guilty both because the offense was committed during and in relation to a drug trafficking crime and because the offense was committed during and in relation to a crime of violence, namely the drive-by shooting and murder of Gil Torres. The crime of violence in Count Fourteen was also the drive-by shooting and murder of Gil Torres.

The term "crime of violence" is defined in 18 U.S.C. § 924(c)(3). There are two parts to that definition, clause (A) and clause (B). In Davis, the Supreme Court held that § 924(c)(3)(B) was unconstitutionally vague.

In United States v. Hill, 890 F.3d 51 (2d Cir. 2018), the Second Circuit adopted the practice of referring "to § 924(c)(3)(A) as the 'force clause' and § 924(c)(3)(B) as the 'risk-of-force clause'", as opposed to the "residual clause". Hill, 890 F.3d at 54. It noted: "We think the shorthand 'risk-of-force clause' is clearer and thus adopt that terminology." Id. at 54 n.5. The petitioner contends that since the risk-of-force clause is unconstitutional, his conviction for the drive-by shooting and murder of Gil Torres under 18 U.S.C. § 36 can no longer qualify as a "crime of violence" to support his conviction

for discharging a firearm in the commission of a "crime of violence."

This argument lacks merit because violation of 18 U.S.C. § 36 is a crime of violence under 18 U.S.C. § 924(c)(3)(A), the force clause, which requires that an offense be a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another". 18 U.S.C. § 924(c)(3)(A). In order to determine whether 18 U.S.C. § 36 qualifies as a crime of violence, the court must use what is known as the "categorical approach". Taylor v. United States, 495 U.S. 575, 600 (1990). In Hill, the court explained, with respect to the categorical approach:

> Critically, the Supreme Court has made clear in employing the categorical approach that to show a predicate conviction is not a crime of violence "requires more than the application of legal imagination to [the] . . . statute's language." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193[] (2007). As relevant here, there must be "a realistic probability, not a theoretical possibility," that the statute at issue could be applied to conduct that does not constitute a crime of violence. Id. To show that a particular reading of the statute is realistic, a defendant "must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues." Id. To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy. See Moncrieffe v. Holder, 569 U.S. 184, 190–91[] (2013) (noting that "focus on the minimum conduct criminalized by the [relevant] statute is not an invitation to apply 'legal imagination' to the . . . offense" (quoting Duenas-Alvarez, 549 U.S. at 193[])).

Hill, 890 F.3d at 56.

The minimum conduct necessary for a conviction of a drive-by shooting in violation of 18 U.S.C. § 36 is set forth in 18 U.S.C. § 36(b)(2)(A) which provides in pertinent part:

> (2) A person who, in furtherance or to escape detection of a major drug offense and with the intent to intimidate, harass, injure, or maim, fires a weapon into a group of 2 or more persons and who, in the course of such conduct, kills any person shall, if the killing—
>
> (A) is a first degree murder (as defined in section 1111(a)), be punished by death or imprisonment for any term of years or for life, fined under this title, or both[.]

18 U.S.C. § 36(b)(2)(A). This conduct, i.e. acting with the intent to intimidate, harass, injure, or maim, and then firing a weapon into a group of 2 or more persons and, in the course of such conduct, killing any person has as an element the use, attempted use, or threatened use of physical force against the person or property of another. As the government observes, "Section 36 is a textbook example of a crime of violence under the force clause of § 924(c)." Gov't's Resp. at 38. See United States v. McCoy, 58 F.4th 72, 74 (2d Cir. 2023) ("completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A).")

## IV.  CONCLUSION

For the reasons set forth above, the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, as amended (ECF Nos. 1, 7) is hereby DENIED.  The court will not

issue a certificate of appealability because Thomas has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

It is so ordered.

Signed this 20th day of April, 2023 at Hartford, Connecticut.

_____
/s/AWT
Alvin W. Thompson
United States District Judge
